# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-07-00701-CV

---

**Robert Belt, Appellant**

**v.**

**Point Venture Property Owners' Association, Inc., Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT**
**NO. D-1-GV-92-006331, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Appellant Robert Belt brings this appeal *pro se* from an order to disburse excess proceeds from a tax foreclosure sale of property. *See* Tex. Tax Code Ann. § 34.04 (West 2008). In eight issues, Belt contends that the trial court erred in ordering the excess proceeds from the foreclosure sale disbursed to appellee Point Venture Property Owners' Association, Inc. ("PVPOA"). For the reasons that follow, we affirm the trial court's order.

### BACKGROUND

The underlying suit was brought in 1992 by various taxing units[1] to recover delinquent taxes, penalties, and interest owed on property commonly known as 208 Venture Boulevard (the "Property") in the Point Venture subdivision from Gary L. Moore and Michelle

---

[1] The taxing units were Travis County, Lago Vista Independent School District, Travis County Emergency Services District No. 1, and Water Control Improvement District-Point Venture.

Moore, the owners of the Property. On April 24, 2001, the trial court entered judgment for the taxing units and ordered the clerk to issue an order of sale.[2] The clerk thereafter issued an order of sale, the Property was sold at a foreclosure sale in May 2007, and the excess proceeds from the sale of $5,871.02 were deposited with the clerk of the court.

In June 2007, PVPOA filed a petition asserting a claim to the excess proceeds based on past-due property owners' association fees owed on the Property. PVPOA asserted that the "outstanding yearly property assessment fees, late fees and collection fees" on the Property "which accrued during the time that Gary L. Moore was the property owner, through May 1, 2007," totaled $13,385.25.[3] PVPOA claimed that the past-due fees were secured by a lien on the Property as provided for in the deed restrictions. The deed restrictions establish a "Venture Yacht and Country Club Charge" secured by a lien on each property in the subdivision:

> In order to secure the payment of the Club Fund charge hereby levied, a vendor's lien shall be and is hereby reserved in the Deed from the Developer to the purchaser of each lot or portion thereof, which lien shall be enforceable through appropriate judicial proceedings by the Developer.

---

[2] The judgment was also against Gaslight Square Apartments (in rem only) if active and if inactive, the unknown owners, officers, directors and shareholders of Gaslight Square Apartments (in rem only), the City of Austin (in rem only), and the F.D.I.C. in its corporate capacity as the receiver for City National Bank (in rem only).

[3] PVPOA's petition to recover excess proceeds was supported by an affidavit from PVPOA's general manager with attached business records. According to the affidavit and business records, PVPOA's claims were for past-due property owners' association fees for the years 2002 to 2007. PVPOA's general manager averred that he was the custodian of records and that the business records showing the outstanding fees owed on the Property were kept in the regular course of business. Although Belt argues on appeal that PVPOA's claim was for "approximately 17 years of alleged debt," Belt did not offer evidence to support this argument or contrary evidence to PVPOA's affidavit and business records.

PVPOA's bylaws define "Club Fund Charge" to include "[d]ues, assessments, interest, late charges, maintenance fees, maintenance fund, and club fund charges." The deed restrictions were recorded in the Travis County real property records.

Michelle Moore, Gary L. Moore, and Robert Belt also filed petitions asserting claims to the excess proceeds as former owners of the Property. Belt had purchased an undivided 50% interest in the Property from Gary L. Moore by "Deed Without Warranty" shortly before the tax foreclosure sale. Belt purchased Gary L. Moore's interest "[t]ogether with the conveyance of all existing encumbrances, debts, liens, taxes, and property owners' association dues." At the time the Property was sold, Michelle Moore owned the other undivided 50% interest in the Property.

The trial court held two hearings on the competing petitions to the excess proceeds. The trial court heard argument at the first hearing and took the matter under advisement. The parties did not offer evidence at the first hearing. At the second hearing, Belt argued to the trial court that he had "authorities that prove for a fact that [PVPOA] did not have a lien as they claim," referring the trial court to the "county's own investigation" from Stewart Title that showed the Property's owners and lienholders. Belt, however, did not offer this document or any other document as evidence at the second hearing. At the conclusion of the second hearing, the trial court ordered the excess proceeds disbursed to PVPOA. This appeal followed.[4]

---

[4] Michelle Moore and Gary L. Moore have not appealed the trial court's order.

# ANALYSIS

Belt's main contention in his eight issues is that PVPOA's lien was unenforceable or void to recover excess proceeds. In his first and sixth issues, Belt asserts that the applicable limitations period bars PVPOA's lien claim to the excess proceeds. In his second issue, Belt contends that PVPOA's remedy was to bring suit to collect past-due association fees, not to seek recovery of the excess proceeds from a tax foreclosure sale. In his third, fourth, and fifth issues, Belt contends that sections of the property and tax codes extinguished or voided PVPOA's lien claim for past-due fees and, if the sections did not, PVPOA's lien claim passed to the purchaser at the tax foreclosure sale. In his seventh issue, Belt contends that trial court errors resulted in an incorrect decision and, in his eighth issue, Belt contends that, because Belt was a former owner of the Property, the trial court should have ordered the excess proceeds distributed to him pursuant to priorities in the tax code.

## *Standard of Review*

The issues presented require a review of the trial court's interpretation of the relevant statutes. We review matters of statutory construction *de novo*. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). "We look first to the 'plain and common meaning of the statute's words.'" *Id*. (quoting *State v. Gonzales*, 82 S.W.3d 322, 327 (Tex. 2002)). "If the statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning." We "'read the statute as a whole to give effect to every part.'" *Gonzalez*, 82 S.W.3d at 327 (quoting *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998)); *see also* Tex. Gov't Code Ann. § 311.021 (West 2005).

*Tax Code Priorities*

Section 34.04 of the tax code addresses claims for excess proceeds deposited with the clerk of the court from a tax foreclosure sale. Tex. Tax Code Ann. § 34.04 (West 2008). Subsection (a) addresses procedural requirements for bringing a petition to recover excess proceeds, and subsection (c) provides the priorities for disbursing excess proceeds when there are competing claims to the proceeds:

> (a) A person, including a taxing unit, may file a petition in the court that ordered the seizure or sale setting forth a claim to the excess proceeds. The petition must be filed before the second anniversary of the date of the sale of the property. The petition is not required to be filed as an original suit separate from the underlying suit for seizure of the property or foreclosure of a tax lien on the property but may be filed under the cause number of the underlying suit.
>
> * * *
>
> (c) At the hearing the court shall order that the proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:
>
>> (1) to the tax sale purchaser if the tax sale has been adjudged to be void and the purchaser has prevailed in an action against the taxing units under Section 34.07(d) by final judgment;
>>
>> (2) to a taxing unit for any taxes, penalties, or interest that have been due or delinquent on the subject property subsequent to the date of the judgment or that were omitted from the judgment by accident or mistake;
>>
>> (3) to any lienholder, consensual or otherwise, for the amount due under a lien, in accordance with the priorities established by applicable law;
>>
>> (4) to a taxing unit for any unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that were not satisfied from the proceeds from the tax sale; and

5

(5) to each former owner of the property, as the interest of each may
appear.

*Id*. Pursuant to subsection (c), a lienholder's claim to excess proceeds is superior to a former

property owner's claim. *Id*.

Belt does not dispute PVPOA's authority to assess association fees against the

Property or that the deed restrictions imposed a lien on the Property to secure the association fees.[5]

Pursuant to the statutory priorities, the underlying issue then is whether "an amount [is] due under"

PVPOA's lien. *See id*. If "an amount [is] due," the amount owed to PVPOA under subsection (c)(3)

has priority over Belt's claim under subsection (c)(5) as a former owner of the property. With this

statutory context in mind, we turn to Belt's issues.

***Limitations***

Belt's first and sixth issues address the applicability of limitations to bar PVPOA's

lien claim. In his first issue, Belt contends that PVPOA's claim for past-due fees is barred by the

limitations period of four years, either pursuant to the residual limitations period, *see* Tex. Civ. Prac.

& Rem. Code Ann. § 16.051 (West 1997), or the limitations period for debt. *See id.* § 16.004(a)(3)

(West 2002). In his sixth issue, Belt contends the limitations period for a lien on real property is not

applicable and, even if it is, the exception that would extend the limitations period does not apply.

*See id*. §16.035 (West 2002).

---

[5] Belt stated to the trial court at the first hearing: "We do not oppose the deed restrictions, and [PVPOA's counsel] is correct, the deed restrictions do give them the right to assess maintenance fees."

In response, PVPOA argues that the four-year limitations periods do not apply to bar its claim for excess proceeds, that Belt does not have standing to assert limitations because PVPOA has not asserted a claim against Belt, and, alternatively, that if a statutory limitations period of four years applies, the applicable limitations period is for a lien on real property and the exception to the running of the limitations period for a lien on real property applies. *See id.* § 16.035(e). Because it is dispositive of Belt's issues on limitations, we address the limitations period that applies to PVPOA's petition for excess proceeds.

A petition for excess proceeds is a "chose in action which exists if and when an excess fund is created." *See Syntax, Inc. v. Hall*, 899 S.W.2d 189, 190 (Tex. 1995). It is not a suit against the property owners but a statutorily created proceeding that arises from a tax foreclosure sale of property. *See* Tex. Tax Code Ann. § 34.04. Section 34.04 of the tax code provides that "the petition must be filed before the second anniversary of the date of the sale of the property." *See id*. § 34.04(a). In this case, the right to the excess proceeds from the foreclosure sale of the Property arose in May 2007—when the Property was sold in foreclosure, and PVPOA filed its petition shortly after the foreclosure sale. Its petition, therefore, was timely and not barred pursuant to section 34.04(a). *See id.*

Belt relies on *Woodside Assurance, Inc. v. N.K. Resources, Inc.*, 175 S.W.3d 421, 425-26 (Tex. App.—Houston [14th Dist.] 2005, no pet.), an appeal from an excess proceeds order, to support his contention that limitations periods in chapter 16 of the civil practice and remedies code bar PVPOA's claim. In *Woodside Assurance*, our sister court concluded that a promissory note holder that did not bring suit pursuant to a deed of trust securing the note within four years of the

7

note's maturity "lost all remedies for the enforcement of its lien and had no entitlement to the excess proceeds." *Id*. The note that formed the basis of the claim in *Woodside Assurance* matured more than four years before the tax suit was filed. *Id.* The court, relying on section 16.036(d) of the Texas Civil Practice and Remedies Code,[6] explained:

> When there is no recorded renewal or extension, the maturity date stated in the original instrument is conclusive evidence of the maturity date of the debt. [Tex. Civ. Prac. & Rem. Code Ann. § 16.036(d).] Four years from the date, it is conclusively presumed that the lien debt is paid. . . . The effect of such a conclusive presumption of payment, like the effect of actual payment, is to terminate the superior title retained by the vendor and, consequently, to terminate all remedies for the enforcement of such superior title. . . . A bona fide third person is entitled to the statutory presumption that the debt was paid and that the lien became void and ceased to exist.

*Id*. at 425 (internal citations omitted). Because the debt on the note was presumed paid four years from the maturity date of the note, the lien had ceased to exist when the petition for excess proceeds was filed. *Id*. Because the claimant's lien no longer existed, the claimant was not entitled to excess proceeds as a "lienholder" pursuant to section 34.04(c)(3) of the tax code. *See id*.

In contrast, Belt concedes that PVPOA has a lien against the Property. In addition, PVPOA offered evidence that association fees secured by the lien accrued after the judgment was entered in the underlying tax suit and that the fees remained outstanding on the Property at the time

---

[6] Section 16.036(d) provides:

> The maturity date stated in the original instrument or in the date of the recorded renewal and extension is conclusive evidence of the maturity date of the debt or obligation.

Tex. Civ. Prac. & Rem. Code Ann. § 16.036(d) (West 2002).

the Property was sold in foreclosure. Belt did not offer contrary evidence of payments against the outstanding balance.[7] PVPOA's claim for association fees secured by its lien is not analogous to the note, deed of trust, and conclusive presumption of payment that were at issue in *Woodside Assurance*. *See id.*

On this record, we conclude that the applicable limitations period to PVPOA's petition was two years from the date of the sale of the Property pursuant to section 34.04(a) of the tax code and, because PVPOA filed its claim within two years of the sale of the Property, limitations does not bar PVPOA's claim. *See* Tex. Tax Code Ann. § 34.04(a). We overrule Belt's first and sixth issues.

### *Failure to Bring Suit*

In his second issue, Belt contends that PVPOA's remedy for the recovery of unpaid fees was to bring suit against the property owners, not to seek recovery from the excess proceeds of a tax foreclosure sale, and that PVPOA failed to bring suit within the limitations period. We agree that one available remedy for PVPOA was to file suit to collect past-due association fees, but filing suit was not PVPOA's exclusive remedy. Section 34.04(c) of the tax code allows a lienholder to file a petition for excess proceeds "for the amount due under a lien, in accordance with the priorities established by applicable law." *See id*. § 34.04(c). A lienholder, however, is not required to bring "an original suit separate from the underlying suit" before seeking excess proceeds from a tax

---

[7] Belt disputes the type of lien that is imposed on the Property, but not that PVPOA has a lien. Belt states in his reply brief to this Court, "PVPOA *does* possess a *contractual lien*." *See Inwood North Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) (supreme court characterizes homeowners association's lien for delinquent assessments as "contractual lien").

foreclosure sale. *See id.* § 34.04(a).  We conclude that PVPOA was entitled to file a petition for the

excess proceeds without first filing a separate suit to recover its lien claim and, for the reasons

previously stated, that its claim was not barred by limitations.  We overrule Belt's second issue.

***Tax and Property Code Provisions***

In his third, fourth, and fifth issues, Belt relies on provisions in the tax and property

codes to support his contention that PVPOA's lien was void or unenforceable to support its petition

for the excess proceeds.  In his third issue, Belt contends that subsections (d) and (e) of section 32.05

of the tax code extinguished PVPOA's lien claim because PVPOA did not record notice of a claim

in a liquidated amount in the real property records prior to the foreclosure sale. *See id*. § 32.05(d)-(e)

(West 2008).[8]  Belt relies on the language in these subsections that a tax sale "extinguishes the

---

[8]  Section 32.05 is titled "Priority of Tax Liens Over Other Property Interests," and
subsections (d) and (e) read:

> (d) In an action brought under Chapter 33 for the enforced collection of a delinquent
> tax against property, a property owners' association, homeowners' association,
> condominium unit owners' association, or council of owners of a condominium
> regime that holds a lien for regular or special maintenance assessments, fees, dues,
> interest, fines, costs, attorney's fees, or other monetary charges against the property
> is not a necessary party to the action unless, at the time the action is commenced,
> notice of the lien in a liquidated amount is evidenced by a sworn instrument duly
> executed by an authorized person and recorded with the clerk of the county in which
> the property is located.  A tax sale of the property extinguishes the lien held by a
> property owners' association, homeowners' association, condominium unit owners'
> association, or council of owners of a condominium regime for all amounts that
> accrued before the date of sale if:
>
> > (1)  the holder of the lien is joined as a party to an action brought
> > under Chapter 33 by virtue of a notice of the lien on record at the time
> > the action is commenced; or

lien held by a property owners' association" when "the notice of the lien in a liquidated amount" "is not of record at the time the action is commenced." *See id.* Belt's reliance on this language is misplaced.

Section 32.05 establishes the priorities between a tax lien and other liens. Subsections (d) and (e) address whether a property owners' association claiming a lien on property is a necessary party in a suit to collect delinquent taxes and the circumstances that extinguish a property owners' association lien on the property at the time the property is sold. *Id*. PVPOA does not contend that its lien for past-due association fees prior to the foreclosure sale is enforceable against the purchaser of the Property, and that is not the issue. Nothing in section 32.05 addresses or precludes a property owners' association from filing a petition to recover excess proceeds from a tax foreclosure sale pursuant to section 34.04(c) of the tax code. *See id.* §§ 32.05, 34.04(c). We conclude that subsections (d) and (e) of section 32.05 do not preclude PVPOA from asserting a claim to the excess proceeds.[9]

---

> (2)  the notice of lien is not of record at the time the action is commenced, regardless of whether the holder of the lien is made a party to the action.

> (e)  The existence of a recorded restrictive covenant, declaration, or master deed that generally provides for the lien held by a property owners' association, homeowners' association, condominium unit owners' association, or council of owners of a condominium regime does not, by itself, constitute actual or constructive notice to a taxing unit of a lien under Subsection (d).

Tex. Tax Code Ann. § 32.05(d)-(e) (West 2008).

[9] PVPOA contends that the subsections (d) and (e) of section 32.05 are inapplicable because they were enacted after the commencement of the tax action. Because we conclude that the subsections do not preclude PVPOA's lien claim to the excess proceeds, we need not address this issue.

In his fourth issue, Belt similarly contends that section 13.001 of the property code voided PVPOA's claim secured by its lien because PVPOA did not record its claim in a liquidated amount. *See* Tex. Prop. Code Ann. § 13.001 (West 2004). Section 13.001(a) of the property code provides:

> (a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

*Id*. § 13.001(a). By its plain language, section 13.001(a) does not require a lien to be recorded in a liquidated amount. *See id.* By recording the deed restrictions in the real property records, PVPOA provided notice to "all persons of the existence of the instrument." *See id*. § 13.002 (West 2004). As the purchaser of the Property, Belt had constructive notice of the covenant to pay association fees, *see Inwood North Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987), and he purchased the Property "together with the conveyance of all existing encumbrances, debts, liens, taxes and property owners' association dues." We conclude that section 13.001 of the property code did not void PVPOA's claim to excess proceeds.

In his fifth issue, Belt contends alternatively that, if PVPOA's claim for past-due association fees was not extinguished or voided, the purchaser of the Property is liable to PVPOA for the past-due amounts pursuant to section 34.01(n) of the tax code. *See* Tex. Tax Code Ann.

12

§ 34.01(n) (West 2008).[10] Section 34.01 describes the procedure to be followed for tax sales of property, and subsection (n) provides that the purchaser is vested with "good and perfect title." *See id.* This subsection provides that a purchaser takes the property free and clear of existing liens and obligations but remains obligated to pay assessments secured by a lien or restrictive covenant "running with the land" from the date of purchase. *Id.* The subsection, however, does not address or preclude a property owners' association from recovering past-due fees in an excess proceeds proceeding pursuant to section 34.04(c) of the tax code. *See id.* § 34.04(c). We overrule Belt's third, fourth, and fifth issues.

### *Trial Court Error*

In his seventh issue, Belt contends that the trial court made numerous errors "to create an environment in which a correct opinion was unobtainable." Among the errors asserted by Belt were the trial court's "failure to read/review briefs submitted," its lack of "interest[] in certain pieces of evidence," its "unwillingness to enter documents into evidence," its "misunderstanding

---

[10] Section 34.01(n) reads:

(n) The deed vests good and perfect title in the purchaser or the purchaser's assigns to the interest owned by the defendant in the property subject to the foreclosure, including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption, the terms of a recorded restrictive covenant running with the land that was recorded before January 1 of the year in which the tax lien on the property arose, a recorded lien that arose under that restrictive covenant that was not extinguished in the judgment foreclosing the tax lien, and each valid easement of record as of the date of the sale that was recorded before January 1 of the year the tax lien arose. The deed may be impeached only for fraud.

Tex. Tax Code Ann. § 34.01(n) (West 2008).

of the nature of an excess proceeds hearing," and by "deferring to the plaintiffs' attorney" in the underlying suit. Belt cites no authorities to support this issue. An issue on appeal that is unsupported by argument or citation to any legal authority presents nothing for review. *See* Tex. R. App. P. 38.1(h); *Strange v. Continental Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied). Accordingly, Belt has presented nothing for our review.

Further, although Belt states in his briefing to this Court that "he presented the trial court with several documents, including an owner verification form prepared by Stewart Title of Austin, as part of the underlying suit, in which owners and lien holders of record are identified," Belt did not offer any document into evidence at either hearing. Because he did not offer any documents or obtain a ruling from the trial court on the documents' admissibility at the hearing, he has not preserved any issue for our review. *See* Tex. R. App. P. 33.1. In any event, to reverse a judgment based on a claimed error in an evidentiary ruling, a party must show that the error probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Even if the trial court erred in excluding documents, Belt has not met this burden. *See* Tex. R. App. P. 44.1(a)(1). We overrule Belt's seventh issue.

### *Priority of Competing Claims*

In his eighth issue, Belt contends that, because PVPOA's claim as a lienholder is barred or has been extinguished, he has priority to the excess proceeds as a former owner of the Property. *See* Tex. Tax Code Ann. § 34.04(c). Because we have concluded that PVPOA established

14

an amount due under its lien, PVPOA's claim is superior to Belt's claim to the excess proceeds. *See id*. We overrule Belt's eighth issue.[11]

## CONCLUSION

Having overruled Belt's issues, we affirm the trial court's order disbursing the excess proceeds to Point Venture Property Owners' Association, Inc.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 30, 2008

---

[11] In his reply brief, Belt raises the additional argument that "PVPOA has failed to produce the documentation needed to satisfy the evidentiary standards of Section 34.04(c) of the Texas Tax Code." Belt argues that "the computer records presented by PVPOA have never been determined to be accurate or valid through legal proceedings" and that he was not given a chance to dispute the charges. Belt did not obtain a ruling from the trial court as to the admissibility of PVPOA's affidavit with attached business records. By failing to obtain a ruling from the trial court, Belt has not preserved this issue for our review. *See* Tex. R. App. P. 33.1.