**WOODSIDE ASSURANCE, INC., Appellant,**

v.

**N.K. RESOURCES, INC., Appellee.**

No. 01–04–00006–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 30, 2005.

Gregory Wayne Marcum, Houston, TX, for Appellant.

Mark K. Knop, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Woodside Assurance, Inc. (Woodside), appeals from the trial court's judgment that awarded excess cash proceeds from a tax foreclosure sale to appellee, N.K. Resources, Inc. (NKR). In three issues on appeal, Woodside argues that it was entitled to the excess proceeds because (1) it had a valid and higher priority claim to the excess proceeds than NKR; (2) NKR manipulated the tax foreclosure process; and (3) the statute of limitations did not bar its claims. We affirm.

## Background

On May 31, 2001, various taxing units [1] filed suit against Lloyd Gibbs Jr.[2] and Woodside [3] to enforce tax liens on Gibbs's property at 3230 W. Fuqua Street, Houston, Texas 77045. The trial court rendered a final judgment on September 10, 2002, ordering that the property be sold at auction and that the proceeds be used to pay off the outstanding tax liens. The final judgment provided,

> [A]ny excess in the proceeds of sale and above the amount necessary to defray the cost of suit, sale, other expenses made chargeable in this suit against such proceeds and to fully discharge the judgments against said property, shall be paid to the clerk of this Court and be retained by said clerk for disposition to any parties legally entitled thereto in

accordance with the terms and provisions of the Texas Property Tax Code.

A few days before the foreclosure auction, Gibbs sold the property to NKR. On January 7, 2003, Nanik Bhagia, a co-owner of NKR, purchased the property for $81,500 at the foreclosure auction. After all expenses were paid, $63,000 in excess cash proceeds was deposited in the trial court's registry.

On March 7, 2003, NKR, as a former owner of the property, filed a claim to withdraw the excess proceeds from the registry of the trial court. On May 7, 2003, Woodside filed a petition to withdraw the excess proceeds. To support its entitlement to the excess proceeds, Woodside relied on a deed of trust that it had acquired from J–Hawk Corporation (J–Hawk). J–Hawk had previously received a promissory note from Gibbs that was secured by a deed of trust on the subject property. The promissory note had a final maturity date of March 1, 1995. On October 19, 1994, J–Hawk transferred its interest in the note and deed of trust to Woodside. By order dated December 4, 2003, the trial court awarded the excess proceeds to NKR. Woodside appeals from this order.

## Analysis

### *Standard of Review*

■■■■ The issue presented requires a review of the trial court's interpretation and application of the Texas Property Tax Code. Statutory interpretation presents a question of law subject to de novo review. *Mitchell Energy Corp. v. Ashworth*, 943

---

1. Houston Independent School District, City of Houston, Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, Harris County Hospital District, and the Houston Community College System.

2. Gibbs failed to appear or to answer.

3. The taxing units filed suit against Woodside in rem only. Woodside failed to appear or to answer.

S.W.2d 436, 437 (Tex.1997). A trial court has no discretion when evaluating a question of law. *See Huie v. DeShazo,* 922 S.W.2d 920, 927 (Tex.1996); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). We conduct an independent review and evaluate the statute to determine its meaning. *See Lozano v. Lozano,* 975 S.W.2d 63, 66 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

### Statute of Limitations

In its first issue on appeal, Woodside argues that the trial court should have awarded it the excess proceeds because it had a higher priority lien than NKR.

Chapter 34 of the Property Tax Code contains the procedures for tax sales and redemptions. *See* TEX. TAX CODE ANN. §§ 34.01–.23 (Vernon 2001 & Supp.2004–2005). Proceeds of a tax sale are applied first to costs, fees and commissions associated with the tax suit and the tax sale, then to taxes, penalties, and interest and other expenses and amounts awarded under the judgment. *Id.* § 34.02 (Vernon Supp.2004–2005). Excess proceeds are paid to the clerk of the court issuing the warrant or order of sale. *See id.* § 34.02(d). The clerk must keep the proceeds for two years. *Id.* § 34.03(a)(2) (Vernon 2001). A person may file a petition setting forth a claim to the excess proceeds. *Id.* § 34.04(a) (Vernon Supp. 2004–2005). The petition must be filed before the second anniversary of the date of the sale of the property. *Id.* If no claimant establishes entitlement to the proceeds within the period provided by section 34.03(a), that is, two years from the date of the sale, the clerk must distribute the excess proceeds to the taxing units that participated in the sale. *Id.* § 34.03(b).

Section 34.04 provides that the trial court must order that the excess proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:

(1) to the tax sale purchaser if the tax sale has been adjudged to be void and the purchaser has prevailed in an action against the taxing units under Section 34.07(d) by judgment;

(2) to a taxing unit for any taxes, penalties, or interest that have become due or delinquent on the subject property subsequent to the date of the judgment or that were omitted from the judgment by accident or mistake;

(3) to any other lienholder, consensual or otherwise, for the amount due under a lien, in accordance with the priorities established by applicable law;

(4) to a taxing unit for any unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that were not satisfied from the proceeds from the tax sale; and

(5) to each former owner of the property, as the interest of each may appear.

*Id.* § 34.04.

NKR argued at the trial court and argues on appeal that Woodside's lien, on which it relied to recover the excess proceeds, is void pursuant to section 16.035(d) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(d) (Vernon 2002). Section 16.035 provides,

(a) A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.

(b) A sale of real property under a power of sale in a mortgage or deed of

trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

(c) The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when a cause of action on an outstanding real property lien has accrued for more than four years, except as provided by:

    (1) Section 16.062, providing for suspension in the event of death; or

    (2) Section 16.036, providing for recorded extensions of real property liens.

(d) On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.

. . .

(g) In this section, "real property lien" means:

    (1) a superior title retained by a vendor in a deed of conveyance or a purchase money note; or

    (2) a vendor's lien, a mortgage, a deed of trust, a voluntary mechanic's lien, or a voluntary materialman's lien on real estate, securing a note or other written obligation.

*Id.* § 16.035(a)-(d), (g).

■ When there is no recorded renewal or extension, the maturity date stated in the original instrument is conclusive evidence of the maturity date of the debt. *Id.* § 16.036(d) (Vernon 2002). Four years from that date, it is conclusively presumed that the lien debt is paid. *See The Cadle Co. v. Butler*, 951 S.W.2d 901, 909 (Tex. App.-Corpus Christi 1997, no pet.). The effect of such a conclusive presumption of payment, like the effect of actual payment, is to terminate the superior title retained by the vendor and, consequently, to terminate all remedies for the enforcement of such superior title. *Yates v. Darby*, 133 Tex. 593, 131 S.W.2d 95, 99 (1939). A bona fide third person is entitled to the statutory presumption that the debt was paid and that the lien became void and ceased to exist. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 582 (Tex.1984); *Yates*, 131 S.W.2d at 99.

NKR argues that the deed of trust, on which Woodside relied for its entitlement to the excess proceeds, matured on March 1, 1995. Thus, pursuant to section 16.035(d), the lien on the deed of trust became void on March 1, 1999. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(d). We agree.

■ Woodside could recover on its real property lien no later than four years after the cause of action accrued. *Id.* Here, the cause of action accrued on the note's maturity date, March 1, 1995. *See The Cadle Co.*, 951 S.W.2d at 909. Four years after the cause of action accrued, the real property lien became void. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(d). By failing to bring suit on its real property lien within four years of the accrual of its cause of action, Woodside lost all remedies for the enforcement of its lien. *See The Cadle Co.*, 951 S.W.2d at 909. Accordingly, we conclude that Woodside's lien became void on March 1, 1999. Without a valid lien to support its motion to withdraw, Woodside had no entitlement to the excess proceeds.

Woodside responds that NKR cannot rely on the statute of limitations because NKR was not in privity with the debtor, Gibbs. Woodside reasons that Bhagia bought the property and that only he should have been allowed to collect the excess proceeds according to the Code's priority schemes. We disagree.

■ First, NKR was in privity with Gibbs. NKR bought the property from Gibbs prior to the tax foreclosure sale. Second, Bhagia did not qualify to recover any of the excess proceeds pursuant to the priority rules in the Property Tax Code. *See* TEX. TAX CODE ANN. § 34.04(c)(1)-(5). Rather, under the present facts, only the former owners of the property—NKR or Gibbs—had the potential right to recover the excess proceeds. *Id.* § 34.04(c)(5).

Woodside next argues that the debt is not destroyed; only an action to recover the debt is barred by limitations. Woodside relies on *Central National Bank v. Latham & Co.*, 22 S.W.2d 765, 768 (Tex. Civ.App.-Waco 1929, writ ref'd) and *Gallaher v. American–Amicable Life Insurance Co.*, 462 S.W.2d 626, 628 (Tex.Civ. App.-Waco 1971, writ ref'd n.r.e.). The *Gallaher* Court merely repeats the proposition stated in *Latham,* that is,

> The fact that an action for the recovery of a debt is barred by the statute of limitations does not destroy the debt. The bar affects the remedy only. The right of the creditor to receive payment continues after the bar, and will support a new promise of payment or justify the sale of pledged property by the pledgee under power either express or implied, and the application of the proceeds of such sale to the discharge of such debt. In such cases the debtor cannot enjoin the sale without tendering payment of the debt, notwithstanding such bar.

*Latham,* 22 S.W.2d at 768.

Although the debt may not be destroyed, *Latham* makes clear that for the creditor to receive payment, the debtor would have to make a new promise. *See id.* This principle is also known as a moral obligation. *See Machac v. Hajek,* 437 S.W.2d 325, 328 (Tex.Civ.App.-Corpus Christi 1968, writ ref'd n.r.e.). In *Machac,* the court of appeals stated,

> [T]he conclusive presumption of payment provided by the statute … is but a fiction; that if the debt is in fact unpaid there is a moral obligation which lasts until the end of time; that the nature of an unpaid debt for the purchase price of land is not changed by the statute of limitations; that although the debt is unenforceable against the debtor's wishes or as a remedy, the debtor may, if he chooses, acknowledge the same and waive the statutory bar to its enforcement.

*Id.*

■ As discussed in *Machac,* after the statute of limitations passes on a lien, the debt remains as only a moral obligation even though there is no remedy for enforcement. *See id.* Whether NKR may have a moral obligation to repay Woodside, however, is irrelevant to the issue before this Court because the Property Tax Code sets out the procedure for entitlement to excess proceeds. Because we have concluded that Woodside does not have a valid lien, the trial court properly awarded the entirety of the excess proceeds to NKR.

We overrule Woodside's first issue on appeal.

### Foreclosure Process

■ In its second issue on appeal, Woodside argues that the trial court's order should be reversed because NKR manipulated the tax foreclosure process. Specifically, Woodside asserts that NKR manipulated the tax foreclosure process by purchasing the property three days before the auction and that Bhagia overpaid the tax liability because he could ensure that NKR would recoup the excess proceeds.

Woodside cites no authority for the proposition that NKR manipulated the tax foreclosure process. We note that nothing in the Property Tax Code prevents a third party from buying the subject property

prior to the foreclosure sale. Also, Bhagia, in his individual capacity, was the winning bidder at auction.

Woodside also asserts that NKR's actions allowed it to bypass the requirements in section 34.04(f) to recover excess proceeds. *See* Tex. Tax Code Ann. § 34.04(f) (Vernon Supp.2004–2005). Section 34.04(f) provides the necessary steps to obtain an assignment of an owner's claim to excess proceeds. *See id.* Although Woodside is correct that NKR's purchase of the property before foreclosure allowed it to avoid section 34.04(f), which governs assignments after foreclosure, we are not aware of any authority that precluded NKR from purchasing the property, or the owner from selling the property, prior to the imminent foreclosure.

We overrule Woodside's second issue on appeal.

### *Application of Limitations Defense*

In his third issue on appeal, Woodside argues that NKR's limitations defense must fail because Woodside was not seeking to recover or to foreclose on real property. Woodside acknowledges that it sought neither to enforce its lien nor to foreclose and to satisfy its debt by power of sale. Woodside contends that, because it sought to recover cash proceeds, which are not considered real property, NKR's limitations defense did not apply. We disagree.

Here, Woodside had a promissory note secured by a deed of trust. Pursuant to section 16.035(g)(2), a real property lien includes a deed of trust. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.035(g)(2) (Vernon 2002). As we stated in our analysis in Woodside's first issue on appeal, once the statute of limitations passed on Woodside's real property lien, all remedies for enforcement of the lien were lost. *See The Cadle Co.,* 951 S.W.2d at 909. With no remedy for enforcement, Woodside could not recover the excess proceeds.

We overrule Woodside's third issue on appeal.

### Conclusion

We affirm the judgment of the trial court and deny all outstanding motions.