Reversed, Rendered in Part and Remanded in Part, and Memorandum Opinion
filed July 3, 2008








 

Reversed,
Rendered in Part and Remanded in Part, and Memorandum Opinion filed July 3,
2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00671-CV

____________

 

WMC MORTGAGE CORP., EMMANUEL D.
GAINES, AND

DARRELL TURNER, Appellants

 

V.

 

JAMES ADAMS AND DOROTHY ADAMS, Appellees

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 2003-00430

 



 

M E M O R A N D U M   O P I N I O N








Appellants WMC Mortgage Corp., Emmanuel D. Gaines, and
Darrell Turner appeal from the trial court=s judgment
awarding appellees James Adams and Dorothy Adams $111,000 in damages against
Gaines and creating an equitable lien against Turner=s property, which
he purchased with loans through WMC.  Appellants claim the Adamses are not
entitled to damages or a lien because there was no liability finding against
any defendant and because the Adamses breached the contract first.  They also
argue that there is legally insufficient evidence to support the trial court=s damages
findings.  We conclude there is no evidence to support the trial court=s damages award. 
Thus, we reverse, render a take nothing judgment against the Adamses, and
remand for further proceedings to remove the lien.

                                                I.  Background

In 1998, the Adamses bought a piece of property in a
residential neighborhood outside of Houston in Porter, Texas for $19,850, which
they financed with a loan.  They wanted to build a home there, but because of
their poor credit, they were not eligible for a construction loan, although
they were eligible for permanent financing.  They often drove to visit the
property on weekends, and during one such visit, they met Robert Rone.  Rone,
who is a builder, owned a lot across the street.  Rone and the Adamses
eventually began discussing the option of Rone building their house, and Rone
put the Adamses in touch with appellant Gaines, who Rone believed could help
the Adamses obtain construction financing.  For a $15,000 fee, the Adamses
agreed to convey the property to Gaines so he could obtain a construction loan,
and after the home was built, the Adamses would use their permanent financing
to repurchase the house from Gaines, who would pay off the construction loan. 
The Adamses hired an attorney to prepare a deed and construction contract to
reflect their agreement.  These documents were signed and given to Rone, who
lost both before he could file the deed.

Everything proceeded without incident until it was time for
the Adamses to purchase the property from Gaines.  Even though the construction
loan was for nearly $289,000, which included building costs, Gaines=s fee, and the
cost to pay off the Adamses= land loan, the Adamses refused to pay
more than $230,000.  The Adamses insisted that the agreement had been for a
flat rate price of $230,000, regardless of the actual construction costs, and
that this $230,000 included Gaines=s fee and the
payoff for the land purchase loan.








After Gaines and Rone refused to accept only $230,000 for
the property, the Adamses sued them, along with Rone=s company, Tri
City Turnkey Services, for, among other things, fraud, breach of contract,
negligent misrepresentation, violations of the Deceptive Trade Practices Act,
and a declaratory judgment that the deed from the Adams to Gaines was void. 
Meanwhile, interest charges on the construction loan were mounting, and Gaines
and Rone began to look for another buyer.  The house appraised for $400,000,
and appellant Darrell Turner agreed to purchase the house for that amount, with
appellant WMC providing 100% financing through two loans.  The Adamses then
added WMC and Turner to the lawsuit, alleging civil conspiracy, requesting
cancellation of the deed from Gaines to Turner, and seeking a declaratory
judgment that neither Turner nor WMC have any right, title, or interest in or
to the property.

During the pendency of this lawsuit, Tri City declared
bankruptcy and many claims were disposed, so that by the time the case went to
the jury, the only remaining claims were declaratory judgment against WMC,
declaratory judgment and conspiracy against Turner, and fraud, conspiracy, and
declaratory judgment against Gaines and Rone.  The jury found that a valid lost
deed existed conveying the property from the Adamses to Gaines and the parties
agreed that the Adamses would pay $230,000 for the house in addition to $15,000
for Gaines and another $15,000 to pay off the debt on the land.  The jury also
found against the Adamses on all remaining claims and awarded zero damages.

After various post-verdict motions and substantial
briefing, the trial court entered a final judgment, finding:

$                  
The lost deed
and construction agreement are to be construed together, and therefore the
Adamses= conveyance to Gaines was subject
to the terms of the construction agreement.

$                  
The Adamses
defaulted by refusing to pay the purchase price as found by the jury.








$                  
Gaines had a
right to sell the property to satisfy the construction loan, but the Adamses
had the right to the excess proceeds from the sale.

$                  
Turner was not
an innocent purchaser because the Adamses had filed a valid lis pendens on the
property at the time Turner purchased it.

The
trial court concluded itAmust apply common law principles to
determine the rights [of the parties] after a default@ because they had
not agreed to such terms.  The trial court awarded the Adamses $111,000 in Aexcess proceeds@ against Gaines,
which is presumably the difference between the $400,000 sales price and the
$289,000 construction loan.  The trial court then awarded the Adamses a lien on
the property, giving it priority over WMC=s two deeds of
trust from its loans to Turner.

Gaines, Turner, and WMC brought this appeal[1]
and raise four issues:  (1) the trial court erred in awarding any damages to
the Adamses because there was no liability finding against any defendant upon
which to base a damages award, and alternatively, no evidence supports the
trial court=s $111,000 award; (2) the trial court erred in
awarding the Adamses a lien and in giving it priority over WMC=s interest; (3)
the trial court erred in awarding damages pursuant to the construction
agreement because it was an illegal contract and therefore void; and (4) the
trial court erred in awarding the Adamses appellate attorney=s fees.  Because
we determine no evidence supported the trial court=s damages award,
we need not decide the merits of the remaining issues, which all depend on the
Adamses= damages.

                                                    II.  Analysis








In a legal sufficiency or no-evidence review, we determine
whether the evidence would enable reasonable and fair‑minded people to
reach the finding under review.  See City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  In conducting this review, we credit favorable
evidence if reasonable factfinders could credit it and disregard contrary
evidence unless reasonable factfinders could not disregard it.  See id. 
We must consider the evidence in the light most favorable to the finding under
review and indulge every reasonable inference that would support it.  See
id. at 822.  We must sustain no-evidence points only when either (a) the
record reveals a complete absence of evidence of a vital fact, (b) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact
is no more than a mere scintilla, or (d) the evidence establishes conclusively
the opposite of the vital fact.  Id. at 810. 

In their first issue, appellants[2]
argue that awarding any damages to the Adamses was improper as a matter of law
because with no liability finding against any defendant, the jury correctly
awarded zero damages and, alternatively, that no evidence supports the trial
court=s award of
$111,000 to the Adamses as so-called Aexcess proceeds.@  The parties
sharply disagree as to whether the trial court found that Gaines breached the
contract by selling the  property without first seeking a judicial foreclosure,
thus providing a basis for the trial court=s damages award. 
Appellants argue that the trial court erred in imposing foreclosure
requirements in this case and further contend the trial court never found that
Gaines breached the contract because the court=s ultimate
conclusion, as expressed in the final judgment, was that Gaines had the right
to sell the property.  We need not determine whether the trial court=s foreclosure theory
was correctly applied or supported by the evidence or whether the trial court
actually made a liability finding against Gaines because we determine there is
no evidence to support the damages award.








The property sold for $400,000, and the construction loan
was for $289,000.  The trial court awarded the $111,000 difference between to
these two amounts as excess proceeds of the sale to the Adamses against
Gaines.  Appellants argue no evidence supports the trial court=s finding that
there was actually $111,000 in excess proceeds.  We agree.  At the closing on
the sale to Turner, much of the $111,000 was disbursed for purposes such as
closing costs and to fund additional repairs and improvements on the property. 
After the closing, the only money remaining from the $111,000 was $22,048.99,
which was given to Gaines by check.  Gaines signed that check over to Rone to
reimburse him for interest payments he had made on the construction loan before
the sale and for additional work he had performed in the house.

The Adamses argue that $65,000 of the money went to paying
a fraudulent invoice to Imani Enterprises for work that was never performed and
that Turner received a $50,000 Akickback@ from Imani.  The
record actually shows that somehow, $50,000 of the $65,000 given to Imani went
back to Turner for improvements on the property and that it was not a kickback
but a portion of the $400,000 loan, on which he is fully liable to WMC.

In any event, even if every dollar of the $111,000 cannot
be accounted for, it is undisputed that much of this money went toward paying
legitimate expenses and, therefore, should not have been considered in
calculating excess proceeds.  See Adams v. First Nat=l Bank of
Bells/Savoy, 154 S.W.3d 859, 874 (Tex. App.CDallas 2005, no
pet.) (holding in foreclosure sale that unpaid expenses should be deducted
before calculating surplus proceeds); Harris v. Harbour Title Co., No.
14-99-00034-CV, 2001 WL 1249730, at *2 (Tex. App.CHouston [14th
Dist.] Oct. 18, 2001, no pet.) (not designated for publication) (noting that
surplus proceeds from foreclosure sale did not include costs, interest, or
fees); Conversion Props., L.L.C. v. Kessler, 994 S.W.2d 810, 813 (Tex.
App.CDallas 1999, pet.
denied) (calculating surplus proceeds from foreclosure sale after deducting for
expenses and fees); cf. Woodside Assurance, Inc. v. N.K. Res., Inc.,
175 S.W.3d 421, 424 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (noting
in tax lien foreclosure, excess proceeds are determined after accounting for
costs, fees, and commissions).








Furthermore, it is undisputed that Gaines, against whom the
trial court assessed the $111,000 judgment, retained nothing other than his
$15,000 fee, which was included in the construction loan, not the remaining
$111,000 at issue.  Thus, even assuming that an excess proceeds calculation is
a proper measure of damages in this case, no evidence supports the trial court=s conclusion that
there are $111,000 in excess proceeds in this case or that Gaines retained any
excess proceeds whatsoever.

Accordingly, we sustain appellants= first issue and
render judgment that the Adamses take nothing on their claims against
appellants.  Further, because there is no longer a damages award in favor of
the Adamses, there is no basis for imposing an equitable lien on the property
to secure the judgment.  We therefore sustain appellants= second issue, in
which they argue that the lien was inappropriate.  Because we determine that no
evidence supports the trial court=s damages award,
we need not reach appellants= third and fourth issues regarding the
legality of the contract and attorney=s fees.  We
reverse the trial court=s judgment, render judgment that the
Adamses take nothing on their claims against appellants, and remand for all
further proceedings necessary to remove the lien against the property.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 3, 2008.

Panel consists of
Justices Yates, Guzman, and Sears.*

 









[1]  The Adamses also filed a notice of appeal, but they
did not file a cross-appellant=s brief or
otherwise brief any cross-issues, and therefore we dismiss their cross appeal.





[2]   The Adamses argue that Turner and WMC have no
standing to challenge the damages award against Gaines and that because Gaines
did not file an appellant=s brief, we have no basis for reviewing the damages
award.  However, as Turner and WMC point out in their reply brief, Gaines filed
a letter joining their brief, which he is permitted to do under Texas Rule of
Appellate Procedure 9.7.  Thus, we may review the trial court=s damages award.





*  Senior Justice Ross A. Sears sitting by assignment.