# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00653-CV

**Melody Strauss, Appellant**

**v.**

**Robert Belt, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GV-86-406328, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

Melody Strauss sold property that she owned to Joseph Gitlin in 1985. In 2001, various taxing entities filed suit against Strauss and Gitlin for back taxes that were owed on the property. Specifically, the entities sought back taxes for years 1984 to 2001. In May 2002, the district court entered a judgment holding Strauss liable for the taxes owed for 1984 and 1985 and holding Gitlin liable for the remaining taxes. The judgment also specified that the property was to be sold at a tax-foreclosure sale. *See* Tex. Tax Code Ann. § 34.01 (West 2008) (setting out requirements for tax sales). The sale was scheduled for October 2007.

A little less than two weeks before the sale, Robert Belt paid Gitlin $1,000 for a quitclaim deed to the property. Although Belt obtained the deed, he did not pay any of the delinquent taxes. The property was sold at auction, and the sale resulted in $20,300.76 in excess proceeds. After the sale, a hearing was held to determine who was entitled to the excess proceeds. During the hearing, Strauss and Belt both contended that they were entitled to the excess proceeds.

At the conclusion of the hearing, the district court awarded the excess proceeds to Belt. Strauss appeals the district court's judgment. We will affirm the judgment of the district court.

## STATUTORY FRAMEWORK

The issues raised in this case all relate to various portions of section 34.04 of the tax code. *See* Tex. Tax Code Ann. § 34.04 (West Supp. 2009). That provision addresses who may recover excess proceeds from a tax-foreclosure sale. *Id.* § 34.04(a) (stating that person may "file a petition in the court that ordered the seizure or sale setting forth a claim to the excess proceeds"). In addition, the provision provides a hierarchical list of claimants to whom excess proceeds may be paid. *Id.* § 34.04(c) (allowing recovery "to each party that establishes its claim to the proceeds").

Some time after this appeal was filed, section 34.04 was amended by the legislature. *See* Act of May 14, 2009, 81st Leg., R.S., ch. 254, § 2, 2009 Tex. Gen. Laws 698, 699-700 (amending section 34.04). Many of the changes were minor, but subsection 34.04(c) was substantively modified. *Id.* For that reason, we will cite to the version of subsection 34.04(c) in effect at the time of the proceeds hearing, Act of May 28, 2003, 78th Leg., R.S., ch. 319, § 10, 2003 Tex. Gen. Laws 1350, 1355 ("former § 34.04(c)"), but will refer to the current versions of the other provisions as needed. At the time of the proceeds hearing, former subsection 34.04(c) specified that the court may award excess proceeds to "each former owner of the property, as the interest of each may appear." *Id.*

Section 34.04 also authorizes a former owner to assign his rights to excess proceeds after a tax-foreclosure sale has occurred. Tex. Tax Code Ann. § 34.04(f)-(h). Under that provision, an individual can purchase a former owner's right to the excess proceeds. Due to the possibility that these assignments could potentially be used to take advantage of property owners, the assignment

2

provisions set out certain criteria that must be met before an assignment will be deemed valid, including requiring the assignee to wait until after the proceeds have been deposited into the court registry before executing an assignment and requiring the assignee to inform the former owner in writing how much excess proceeds were recovered from the tax sale. *Id.* § 34.04(f). If the statutory requirements are not complied with, the assignee has to pay the assignor the full amount of the excess proceeds "plus attorney's fees and expenses." *Id.* § 34.04(g).

## DISCUSSION

On appeal, Strauss raises several related and overlapping issues. Although Strauss lists four issues in her opening brief and lists some other issues in her reply brief, she makes two main contentions. First, she argues that the district court's judgment is improper because the manner in which Belt obtained the property constituted a "de facto assignment of proceeds" and because Belt did not comply with the tax code requirements for the assignment of proceeds. Second, she asserts that the district court's judgment is inconsistent with the legislature's intent to protect homeowners from unscrupulous business practices. We will organize this opinion around those main contentions.[1]

---

[1] As a preliminary matter, we note that in her briefs Strauss does not argue that the proceeds should have been awarded to her. Although she repeatedly asserts that Belt is not entitled to the proceeds, she does not assert that she is entitled to them. Given that Strauss relinquished ownership of the property over twenty years ago and given that Gitlin owned the property immediately before Belt, it is not entirely clear that Strauss would have any claim to the excess proceeds even if the district court's decision were reversed. For this reason, Belt argues on appeal that Strauss is attempting to make arguments on behalf of Gitlin, which Belt insists Strauss does not have standing to make. However, Strauss was named as a defendant in the suit forming the basis for this appeal and was held liable for unpaid taxes. In addition, the cause number for the excess-proceeds hearings is the same as the cause number for the tax-foreclosure proceedings initiated by various taxing entities against Strauss and Gitlin. For these reasons, the record does not demonstrate that Strauss does not have standing to challenge the district court's determinations. *See Woodside Assur., Inc. v. N.K. Res., Inc.*, 175 S.W.3d 421, 425-26 (Tex. App.—Houston [1st Dist.] 2005, no pet.)

Because the issues presented in this case pertain to the district court's construction of the governing statutes, we review the issues de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In construing a statute, appellate courts try to determine and give effect to the legislature's intent. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). When performing this task, we look to the plain meaning of the words used, *City of San Antonio*, 111 S.W.3d at 25, and "read the statute as a whole to give effect to every part," *Gonzalez*, 82 S.W.3d at 327.[2]

**De Facto Assignment**

In her first challenge to the district court's judgment, Strauss contends that because Belt's "true goal" in obtaining the deed was "an assignment of the excess proceeds," he should have had to comply with the assignment requirements listed in subsection 34.04(f). In other words,

(addressing appellant's arguments as to why former owner (appellee) should not retain excess proceeds even though appellant had no right to claim excess proceeds).

[2] Belt also contends that Strauss has "presented this Court with nothing of which to review or dispose" because she has not identified or argued "points of error committed by the trial court." Although Strauss does not set out in her briefs specific errors that were allegedly committed by the district court, the foundation of her appellate arguments is her assertion that the governing statutes do not authorize the recovery of excess proceeds in the circumstances present in this case. Because issues of statutory construction are reviewed de novo on appeal, *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003), we cannot agree with Belt's contention that Strauss "has neither claimed nor presented **any** [appellate] points for review." Moreover, when courts determine that an appellant has failed to adequately brief an issue because he failed to identify errors allegedly committed by the trial court, the courts often also conclude that the appellant has waived any alleged error by failing to refer to any supporting legal authority or to the appellate record. *See, e.g.*, *Lee-way Prince Enters., LLC v. Qai Assur., Inc.*, No. 01-07-01004-CV, 2009 Tex. App. LEXIS 8372, at *12 (Tex. App.—Houston [1st Dist.] Oct. 29 2009, no pet.) (mem. op.); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930-32 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Colson v. PNB Trust & Asset Mgmt.*, No. 07-04-0116-CV, 2004 Tex. App. LEXIS 9571, at *3 n.2 (Tex. App.—Amarillo Oct. 28, 2004, no pet.) (mem. op.). In this case, however, Strauss refers to various legal authorities and to the appellate record in support of her contention that Belt should not have been awarded the proceeds.

4

Strauss asserts that by obtaining a quitclaim deed shortly before the sale, Belt obtained a "de facto assignment of excess proceeds" instead of a transfer of property. Because Belt did not comply with the assignment requirements, Strauss insists that Belt had no legitimate claim to the excess proceeds. Strauss bases her claim regarding Belt's true goal on her assertions that Belt knew the property was "subject to a tax foreclosure judgment," was aware that there was "an impending tax foreclosure sale," made "no effort to pay the taxes or delay the sale," and made no attempt to redeem the property after the foreclosure sale. *See* Tex. Tax Code Ann. § 34.21(e)(1) (West Supp. 2009) (describing procedure in which former owner of property sold at tax sale may reclaim property). Alternatively, Strauss asserts that Belt waived any ownership rights to the excess proceeds by failing to demonstrate any "interest in protecting or maintaining the property."

Our sister court faced similar issues in *Woodside Assur., Inc. v. N.K. Res., Inc.*, 175 S.W.3d 421 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In that case, N.K. Resources ("NKR") purchased property from Lloyd Gibbs after a final judgment had been issued ordering that the property be sold at auction. *Id.* at 423. The sale occurred three days before the foreclosure auction. *Id.* After the sale, NKR applied for the excess proceeds, and the trial court released the proceeds to NKR. *Id.* On appeal, the appellant, Woodside Assurance Inc. ("Woodside"), argued that it had acquired an interest in the property and was entitled to the proceeds. *Id.* More importantly to the present case, Woodside also insisted that NKR should not have been awarded the proceeds because it "manipulated the tax foreclosure process by purchasing the property three days before the auction" and because its "actions allowed it to bypass the requirements" pertaining to the assignment of excess proceeds. *Id.* at 426-27. When resolving these issues, the appellate court noted that

5

nothing in the former tax code provision "prevents a third party from buying the subject property prior to the foreclosure sale." *Id.* Moreover, although the court concluded that "NKR's purchase of the property before foreclosure allowed it to avoid" the restrictions applicable to the assignments of proceeds "after foreclosure," the court noted that it could find no "authority that precluded NKR from purchasing the property, or the owner from selling the property, prior to the imminent foreclosure." *Id.* at 427.

We agree with the court in *Woodside*.[3] Although Strauss characterizes Belt's actions as a de facto assignment of excess proceeds after a foreclosure sale, it was not an assignment of

_____

[3] In her briefs, Strauss insists that the reasoning in *Woodside* is inapplicable to the facts in this case. That case, like this one, involved a transfer of ownership after a foreclosure auction was scheduled but before the auction occurred. In particular, NKR (a corporation) purchased the property at issue in *Woodside* prior to the foreclosure auction. Although that court concluded that NKR was entitled to the proceeds, Strauss asserts that the holding in *Woodside* should not be applied to this case because unlike the current case, in *Woodside* a co-owner of NKR also bid on and purchased the property during the auction. *See Woodside Assur., Inc.*, 175 S.W.3d at 423. In light of the fact that neither Belt nor one of his business partners bid on or purchased the property during the auction, Strauss contends that *Woodside* is distinguishable and cannot support a determination that Belt is entitled to the proceeds. Strauss also urges that the reasoning in *Woodside* should not be adopted by this Court because the court in *Woodside* did not consider the legislature's intent to protect homeowners from exploitative practices.

While it is true that there were some differences between the facts in this case and those in *Woodside*, none of them meaningfully distinguish this case from *Woodside*. We can find no reason to conclude that the failure by Belt or one of his business partners to bid on or purchase the property at issue during the auction should render the reasoning and holding from *Woodside* inapplicable to this case. Nothing in the governing statutes required a former owner to bid on or purchase the property at auction before he became eligible to any excess proceeds obtained due to the forced sale of the property. Moreover, as will be discussed more thoroughly in the next issue, the statute at issue evinced a public policy interest in protecting property owners from malicious assignment practices occurring *after* a foreclosure sale; however, the statute did not speak to potentially problematic practices that might occur *before* a sale but after a judgment has been entered ordering property to be sold at auction. Accordingly, the absence of a discussion about a legislative intent to protect homeowners in the *Woodside* opinion does not render the case inapplicable to the resolution of this case.

6

proceeds. Rather, this case involved a transfer of ownership interests prior to a foreclosure sale. *See N.K. Res., Inc. v. Sheldon Rd. Mun. Util. Dist.*, No. 01-04-00261-CV, 2005 Tex. App. LEXIS 3604, at *4 (Tex. App.—Houston [1st Dist.] May 12, 2005, pet. denied) (mem. op.) (explaining that subsection 34.04(f) "is applicable only to an assignment of excess foreclosure proceeds given *after* the tax foreclosure sale by one who was the owner of the property-to-be-foreclosed at the time of the foreclosure sale. Section 34.04(f) is *not* applicable to conveyances of real property *prior* to that tax foreclosure sale"). The former tax code provision governing the resolution of this case allowed excess proceeds to be recovered by "each former owner of the property, as the interest of each may appear" once the party "establishes its claim to the proceeds." Former § 34.04(c). By obtaining a quitclaim deed to the property from the previous owner (Gitlin), Belt became an owner of the property. *See Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486 (Tex. 2005) (explaining that quitclaim deeds convey "the grantor's rights in that property"). Further, because he owned the property before the auction, he became a "former owner" after the property was sold at auction.

Moreover, we cannot agree with Strauss's assertion that Belt somehow waived his right to the proceeds by failing to maintain the property. Assuming, as suggested by Strauss, that Belt made no attempts to pay the taxes before the sale, to delay the sale, or to redeem the property, his inactions would not deprive him of his ownership status. Nothing in the governing statutes requires an owner to take any of the actions suggested by Strauss before becoming eligible to receive excess proceeds. To the contrary, foreclosure sales are authorized precisely because the owner has not paid the taxes owed on the property. *See* Tex. Tax Code Ann. § 34.01(a) (West 2008) (explaining that property may be "ordered sold pursuant to foreclosure of a tax lien"). In fact, the

7

property was scheduled for auction because there were taxes owed on the property, and there seems to be no dispute that Gitlin would have been entitled to the proceeds had he retained ownership of the property even though he did not pay the taxes owed. Belt's actions were consistent with Gitlin's, and Belt assumed Gitlin's ownership status after obtaining the quitclaim deed. Accordingly, we cannot conclude that the inactions alleged by Strauss could have waived Belt's statutory right to the excess proceeds.

For these reasons, we conclude that the statute at issue did not prohibit the transfer of ownership prior to a foreclosure sale. Further, we conclude that because the transfer was not an assignment of proceeds, Belt did not have to comply with the restrictions set out by the legislature regarding assignments of proceeds. We also conclude that Belt did not waive his right to the excess proceeds. Therefore, we overrule Strauss's first issue on appeal.

**Legislative Intent**

In her second challenge to the district court's judgment, Strauss contends that allowing Belt to collect the excess proceeds is inconsistent with the legislature's intent. Again relying on the portion of the tax code provision pertaining to the assignment of excess proceeds (subsection 34.04(f)), Strauss contends that by imposing the requirements for a valid assignment of proceeds, the legislature has expressed its intent to protect owners from exploitative practices. *See id.* § 34.04(f). In fact, Strauss claims that prior to the legislature's decision to impose the requirements, individuals were "exploiting the excess proceeds law to earn unconscionable profits" by taking advantage of particularly vulnerable property owners. Similarly, Strauss contends that Belt has created an unconscionable scheme to circumvent the protective requirements necessary for a

8

proper assignment of proceeds by researching "upcoming tax sales," by finding "properties valued significantly more than the taxes due," and by obtaining "a quitclaim deed for nominal consideration" shortly before the sale without any intent to actually keep the property. While Strauss admits that Belt's actions might follow "the letter of the law," she insists that his actions and the district court's judgment are inconsistent with "the intent of the law" and the legislature.

Undoubtedly, the current and former versions of subsection 34.04 demonstrate a legislative interest in protecting property owners from unscrupulous assignment practices occurring after a foreclosure sale, *see id.*, but the statute in effect at the time of the proceeds hearing did not speak to the sale of property before a foreclosure sale and, accordingly, did not set out a similar protective scheme for property owners who sell their property prior to a foreclosure sale but after a judgment has been entered ordering that the property be sold, *see* former § 34.04(c). Although the sale of property prior to a foreclosure sale could result in the types of windfalls that Strauss suggests occurred under the prior statutory scheme when people sought to obtain assignments of excess proceeds after foreclosure auctions, we are not permitted to engraft legislative concerns regarding the assignment of proceeds to an entirely different activity that the legislature chose not to prohibit or restrict.

Our determination that the statute in effect during the relevant time did not evince a legislative intent to protect owners seeking to sell their property before a tax sale is supported by the fact that after the appeal in this case was filed, the legislature chose to address the problems potentially implicated by the sale of property prior to a tax sale but after a foreclosure judgment has

9

been entered.[4]  Under the new statute, the only individuals who may file a claim for excess proceeds are former owners who are listed as defendants in the foreclosure judgment, are related to a defendant listed in the judgment, or have acquired an interest to the property due to the death of a defendant listed in the judgment.  Tex. Tax Code Ann. § 34.04(c) (West Supp. 2009).  Moreover,

---

[4] The legislative history pertaining to the amendments indicates that when the legislature made the changes, it had been informed of the possibility that the prior law allowed for the possibility of unscrupulous business practices.  For example, the bill analysis summary of the argument from the individuals supporting the changes provides as follows:

> While the majority of firms that assist individuals to claim their rightful excess proceeds of a tax sale provide a valuable service and operate within the law, there are a few bad actors whose fraudulent actions and misrepresentations require tighter regulation of the industry. These unscrupulous groups prey on the old and disabled, the illiterate, and those who may not speak English. There have been instances in Texas where assignment companies received tens of thousands of dollars from a court but had first purchased the right to do so from a prior owner for a few thousand dollars. The most common business model for assignment companies is to scan public records for a pending tax sale, pressure an owner into selling the property about to be sold for dimes on the dollar, and then collect the windfall excess proceeds of the tax sale.

House Research Org., Bill Analysis, Tex. H.B. 406, 81st Leg., R.S. (2009).  Further, the house committee report stated that "Unscrupulous investors are exploiting the former owner's rights to the" excess proceeds.  House Comm. on Ways & Means, Bill Analysis, Tex. H.B. 406, 81st Leg., R.S., 2009.  Similarly, the senate committee report related the following:

> Prior to the county auction, people unrelated to the property may obtain information about the former property owner, including contact information and the amount of excess proceeds owed to the former property owner. In an effort to make an investment, the person may then approach the property owner and offer to purchase the property owner's rights. If the property owner agrees to transfer his or her interest, the transfer may be accomplished by an assignment, transfer, or other contractual agreement. . . .  This practice is unregulated, including the amount of the fees that may be charged. Consequently, very high fees may be charged.

Senate Comm. on Fin., Bill Analysis, Tex. H.B. 406, 81st Leg., R.S. (2009).

with the exception of relatives and those who acquire an interest due to the death of a defendant, the statute expressly forbids individuals from filing a claim for excess proceeds if they obtain an interest in property after a foreclosure judgment. *Id.* § 34.04(c-1) (West Supp. 2009).[5]

In her second issue, Strauss also contends that Belt is not entitled to the excess proceeds under former section 34.04(c) of the tax code because he is not "a proper claimant" or a

---

[5] Specifically, the new statutory language statute provides, in relevant part, as follows:

(c) At the hearing the court shall order that the proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds.
. . .

(5) to each former owner of the property, as the interest of each may appear, provided that the former owner:

(A) was a defendant in the judgment;

(B) is related within the third degree by consanguinity or affinity to a former owner that was a defendant in the judgment; or

(C) acquired by will or intestate succession the interest in the property of a former owner that was a defendant in the judgment.

(c-1) Except as provided by Subsections (c)(5)(B) and (C), a former owner of the property that acquired an interest in the property after the date of the judgment may not establish a claim to the proceeds. For purposes of this subsection, a former owner of the property is considered to have acquired an interest in the property after the date of the judgment if the deed by which the former owner acquired the interest was recorded in the real property records of the county in which the property is located after the date of the judgment.

Tex. Tax Code Ann. § 34.04 (West Supp. 2009).

"former owner" as intended by the legislature. *See* former § 34.04(c) (allowing prior owners to be awarded excess proceeds if they establish their claims to proceeds).

Strauss insists that Belt could not properly establish a claim to the proceeds because his actions and inactions "were intended to circumvent the . . . requirements of assignment of excess proceeds." Accordingly, Strauss contends that individuals who "intentionally circumvent the law" cannot properly establish a claim. Similarly, although Strauss seems to concede that Belt owned the property at the time of the sale because of the quitclaim deed, she insists that quitclaim deeds cannot be used to effectively assign away rights to excess proceeds.

Although Strauss again characterizes Belt's actions as essentially an assignment of rights to excess proceeds, that is not what occurred in this case. Moreover, Belt may have avoided the assignment requirements by purchasing the property shortly before the sale, but nothing in the governing statutes prohibited him from engaging in that action. In other words, because Belt did not obtain an assignment of excess proceeds, he did not need to comply with the requirements listed in the provision governing the assignment of proceeds. For that reason, we cannot conclude that Belt's decision to purchase the property before the sale prevented him from properly establishing a claim. On the contrary, Belt established his claim to the proceeds as a former owner precisely by showing that he had purchased and obtained ownership of the property prior to the foreclosure sale.

Alternatively, Strauss contends that even if Belt has a claim to the excess proceeds, he "falls outside the [l]egislative intent of a 'former owner.'" In making this assertion, Strauss notes that when the legislature made prior modifications to the portion of section 34.04 describing who may collect proceeds, the legislative history accompanying the modification "[c]larifie[d] that . . .

12

the last priority of payment of excess sale proceeds is to the former owner of the property, rather than the person who acquired the property at the sale." House Comm. on Local Gov't Ways & Means, Bill Analysis, Tex. H.B. 3419, 78th Leg., R.S. (2003). From this history, Strauss surmises that the legislature "intended for there to be different classes of 'owners,' each with different interests in the property, and each with a different basis for their claims. This amendment clarifies that certain types of 'owners' are <u>not</u> entitled to excess proceeds." Accordingly, Strauss contends that even if Belt was the former owner, "he is not the type of former owner the legislature intended to receive excess proceeds."

Strauss reads too much into the legislative history. Although it addressed a distinction between individuals who owned property before a foreclosure sale and those who owned the property after the sale, it made no further distinction among former owners. Stated differently, it made no distinction between former owners who owned property before a judgment was entered ordering that the property be sold at a foreclosure sale and former owners who purchased property after a judgment was entered but before the foreclosure sale occurred. Similarly, at the time relevant to this case, the governing statute made no distinction between the types of former owners mentioned above. *See* former § 34.04(c).

In light of the preceding, we cannot conclude that the district court's judgment was inconsistent with any expressed legislative intent. Moreover, we cannot endorse Strauss's assertions that Belt was not a proper claimant or a former owner. For these reasons, we overrule Strauss's second issue on appeal.[6]

---

[6] In her reply brief, Strauss alleges for the first time that Belt was not entitled to the excess proceeds because he "offered no evidence of the date of the tax foreclosure sale." *See Few v. Few*,

**CONCLUSION**

Having overruled Strauss's issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   July 23, 2010

---

271 S.W.3d 341, 347 (Tex.App.—El Paso 2008, pet. denied) (stating that appellate courts may not address issues raised for first time in reply brief).  Accordingly, Strauss contends that there was no evidence to support his "contention that [he] was the owner of the property on the date of sale of the property." *See N.K. Res., Inc. v. Sheldon Rd. Mun. Util. Dist.*, No. 01-04-00261-CV, 2005 Tex. App. LEXIS 3604, at *4 (Tex. App.—Houston [1st Dist.] May 12, 2005, pet. denied) (mem. op.) (upholding trial court's decision to deny request for excess proceeds when appellant offered no evidence during trial to support contention that it purchased property two days before foreclosure).

Even assuming that this issue is properly before us, we would still be unable to sustain Strauss's assertion of error.  While it is true that no documents were admitted showing when the quitclaim deed was executed or when the foreclosure sale occurred, Belt did testify during the hearing that he purchased the property "[t]wo weeks before the tax sale."  Further, the timing of those events was not in dispute during the proceeds hearing: Strauss never asserted that Belt had not purchased the property prior to the foreclosure sale.  In fact, in her petition and in her amended petition, Strauss admitted that Belt "obtained a quitclaim deed to the property . . . 13-days before the tax foreclosure sale."  Similarly, in her opening appellate brief, Strauss also concedes that Belt obtained a quitclaim deed prior to the sale.  *See* Tex. R. App. P. 38.1(g) (explaining that in civil cases, appellate courts "accept as true" facts stated in appellant's statement of facts unless "*another party* contradicts them" (emphasis added)).

14