*Court of Appeals*
*Fourth Court of Appeals District of Texas*



## OPINION

No. 04-10-00534-CV

Brian **CROWELL** and Priscilla Garibay-Crowell,
Appellants

v.

**BEXAR COUNTY**; City of San Antonio;
Northeast Independent School District; and Bayview Loan Servicing, LLC;
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-TA1-04346
Honorable Peter A. Sakai, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:        Karen Angelini, Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  August 3, 2011

AFFIRMED

This appeal arises from the trial court's order releasing excess funds from a tax foreclosure sale to appellee, Bayview Loan Servicing, LLC ("Bayview"). We affirm.

## BACKGROUND

In February 2007, Priscilla Garibay-Crowell executed a promissory note payable to The CIT Group/Consumer Finance, Inc. ("CIT"). The promissory note was secured by a "Home Equity Deed of Trust" executed by Priscilla and Brian Crowell in favor of CIT "as lender" and

Mortgage Electronic Registration Systems, Inc. ("MERS") "as nominee for Lender and Lender's successors and assigns." The deed created a lien on the Crowells' homestead located in Bexar County, Texas. Because the Crowells failed to pay their property taxes, Bexar County, the City of San Antonio, and the Northeast Independent School District ("the taxing authorities") sued the Crowells and MERS to recover delinquent ad valorem taxes.

On April 7, 2009, the taxing authorities obtained a judgment in their favor and, on August 4, 2009, sold the property at a foreclosure sale for more than the amount of taxes owed. The excess tax sale proceeds, in the amount of $106,741.76, were deposited into the court's registry. One month later, the Crowells filed a "Petition for Release of Excess Proceeds" pursuant to Texas Tax Code section 34.04, asking the trial court to direct payment of the excess proceeds to them. They served their petition and notice of a hearing on the petition on the taxing authorities, MERS, and Bayview. According to the Crowells, they served Bayview because Bayview was listed on MERS's website as the loan servicer for the deed of trust.

On November 17, 2009, an assistant vice president for CIT signed the following undated "Allange" or rider to the promissory note:

> ALLANGE TO NOTE
>
> PAY TO THE ORDER OF [blank]
>
> WITHOUT RECOURSE
> THE CIT GROUP/CONSUMER FINANCE, INC.

On that same date, MERS, acting as nominee for CIT, executed an "Assignment of Mortgage," and assigned the deed of trust to CitiMortgage, Inc. The assignment stated it was "[e]ffective as of March 30, 2007."[1] Also on November 17, 2009, CitiMortgage in turn executed an "Assignment of Mortgage," and assigned the deed of trust to Bayview. This assignment stated it

---

[1] The assignment identified CIT as "the present legal owner and holder of the [promissory] Note."

was "[e]ffective as of August 1, 2009."[2]  Both assignments were recorded in Bexar County on November 18, 2009.

In a December 16, 2009 order, the trial court noted that Bayview had failed to file any pleadings in the case substantiating its claim to the excess proceeds, "although it verbally claimed an interest in the proceeds."  The court granted Bayview's third request for a continuance of the hearing on the Crowells' petition, and ordered Bayview to file "a comprehensive formal pleading specifyng its claim to the excess proceeds" or be liable for sanctions.

On March 31, 2010, the trial court conducted a hearing on the competing claims to the excess proceeds, following which the court ruled that the proceeds be paid to the Crowells. Bayview later asked the court to reconsider its ruling on the grounds that its claim to the proceeds had priority over the Crowells' claim.  In April 2010, the trial court conducted another hearing on whether Bayview, as an assignee, was entitled to the rights of the original lender.  At the conclusion of the hearing, the court ruled the proceeds should be paid to Bayview.  This appeal by the Crowells ensued.

**DISCUSSION**

Chapter 34 of the Texas Tax Code governs tax sales and redemptions.  Proceeds of a tax sale are applied first to costs, fees, and other expenses associated with the sale, and then to taxes, penalties, and other amounts awarded to the taxing authority under the judgment.  TEX. TAX CODE ANN. § 34.02(a), (b) (West 2008).  After payment of these amounts, any excess proceeds are paid over to the clerk of the court issuing the warrant or order of sale.  *Id.* § 34.02(d).  A person may file a petition in the court that ordered the tax foreclosure sale setting forth a claim to

---

[2]  The assignment identified CitiMortgage as "the present legal owner and holder of the [promissory] Note."

the excess proceeds. *Id.* § 34.04(a) (West Supp. 2010). At the hearing on the petition, the court shall order that the proceeds be paid according to the following priorities to each party that establishes its claim to the proceeds:

> (1) to the tax sale purchaser if the tax sale has been adjudged to be void and the purchaser has prevailed in an action against the taxing units under Section 34.07(d) by final judgment;
> (2) to a taxing unit for any taxes, penalties, or interest that have become due or delinquent on the subject property subsequent to the date of the judgment or that were omitted from the judgment by accident or mistake;
> (3) to any other lienholder, consensual or otherwise, for the amount due under a lien, in accordance with the priorities established by applicable law;
> (4) to a taxing unit for any unpaid taxes, penalties, interest, or other amounts adjudged due under the judgment that were not satisfied from the proceeds from the tax sale; and
> (5) to each former owner of the property, as the interest of each may appear, provided that the former owner:
> > (A) was a defendant in the judgment;
> > (B) is related within the third degree by consanguinity or affinity to a former owner that was a defendant in the judgment; or
> > (C) acquired by will or intestate succession the interest in the property of a former owner that was a defendant in the judgment.

*Id.* § 34.04(c).

At the April 2010 hearing and on appeal, the Crowells argue that while Bayview may have been assigned a valid promissory note, it was not assigned a valid lien because the lien had already been extinguished by the foreclosure sale that was held prior to the purported assignments. According to the Crowells, Bayview holds at most only an unsecured note. Bayview counters that although the lien on the real property was extinguished by the foreclosure sale, its lien interest in any excess proceeds from the sale continued. In other words, according to Bayview, its lien on the land extended to its lien in the excess proceeds.

## A. Is Bayview a Proper Claimant to the Excess Proceeds?

The Crowells do not contend CIT, as the original lienholder, could not have asserted a proper claim to the excess proceeds. Instead, the Crowells assert Bayview does not have a

proper claim to the excess proceeds because any lien held by the assignors (CIT and CitiMortgage) had already been extinguished by the time the assignments were executed on November 17, 2009. In related arguments, the Crowells contend they are not bound by the retroactive terms of the assignments because they were not parties to the assignments and they did not agree to the backdated terms set forth in the assignments.

Generally, all contracts are assignable. *Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App.—San Antonio 1989, writ denied). Although assignments are usually effective on the date on which they are signed, nothing in the Home Equity Deed of Trust requires that any assignment be effective only upon execution.[3] Therefore, CIT and CitiMortgage were not precluded from executing an assignment with a retroactive effective date. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005) (holding that under terms of oil and gas lease, pooling could only be effectuated upon recordation of an instrument identifying the pooled unit; therefore, although lease allowed Union Gas to pool by recording at any time, it did not allow Union Gas to pool on a date other than that of recordation of the "Designation of Pooled Unit").

The Home Equity Deed of Trust identifies MERS as the beneficiary of the deed "solely as nominee for Lender and Lender's successors *and assigns*." [Emphasis added.] The deed also expressly provides that all rights under the deed inure to "the respective successors *and assigns* of Lender and Grantor . . . ." [Emphasis added.] Absent a clause limiting assignment, the deed was assignable. *See Vernor v. Southwest Fed. Land Bank Ass'n*, 77 S.W.3d 364, 366 (Tex. App.—Sam Antonio 2002, pet. denied) (portion of promissory note addressing default contemplated there could be an owner or holder other than the bank and no clause in note

---

[3] The only restriction contained in the deed provided that the Crowells could not sell, transfer, or encumber all or any part of the property without the lender's prior written consent.

prohibited assignment). Thus, because nothing in the language of the Home Equity Deed of Trust prohibits its assignment or requires that the Crowells be made a party to any assignment made by the lender, the Crowells' lack of privity to the assignments did not invalidate the assignments. *See In re FH Partners, L.L.C.*, 335 S.W.3d 752, 764-65 (Tex. App.—Austin 2011, orig. proceeding) (holding that although "'personal trust . . . or credit'" exception prevents debtors from unilaterally assigning their obligations without creditors' consent, it does not apply in the same way to restrict a creditor from assigning its corresponding rights against the debtor").

Based on the assignment, Bayview was in privity with MERS as nominee for CIT. *See e.g., 718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 361 (Tex. App.—Waco 1999, pet. denied) ("When the assignor conveys its entire interest, without retaining any reversionary interest, the assignee . . . is in privity of estate and contract with the [assignor]."); *CLS Assocs., Ltd. v. A____ B____*, 762 S.W.2d 221, 224 (Tex. App.—Dallas 1988, no writ) (holding that privity between collection agency and law firm in attorney's fees suit was evidenced by assignment document executed on behalf of law firm). An assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, including bringing suit. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *see also Southwestern Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010) (holding that because class action representative held contractually valid assignments, representative stepped "into the shoes of the claim-holders and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims"); *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994) ("[A]n assignee receives the full rights of the assignor . . . ."). Thus, as assignee, Bayview had the right to assert its claim to the excess proceeds in the same manner as if CIT had remained the lienholder.

**B.** **Did the Trial Court Err in Determining the Parties' Rights Based Upon the Retroactive Effective Date of the Assignments?**

The Crowells next contend the assignments are not binding to the detriment of third parties such as themselves. The Crowells rely on two federal court opinions for the proposition that parties to a contract cannot make the contract retroactively binding to the detriment of third persons. *See In re Tronox Inc.*, 429 B.R. 73, 99 (Bankr. S.D.N.Y. 2010) (retroactive date of assignment could not be used to avoid fraudulent transfer claim under a limitations defense); *RAS of Sand River, Inc. v. C.I.R.*, T.C. Memo. 1990-322, 1990 WL 86463 (T.C. 1990) (retroactive date of personal services contract could not be used to avoid personal holding company tax). While we do not disagree with this general rule, these federal cases are factually distinguishable from this case. In those cases, the parties attempted to create a defense to liability by antedating their agreement. Here, the assignments did not create new rights or defenses. Instead, the assignments merely transferred the existing right held by CIT—the lien on the Crowells' property.

Finally, the Crowells assert the assignment to Bayview violated subsections (f), (h), and (j) of Tax Code section 34.04. Subsection (f) governs the circumstances under which a person may "take an assignment or other transfer of an *owner's* claim to excess proceeds . . . ." TEX. TAX CODE. § 34.04(f) (emphasis added). The Crowells contend the word "owner" applies to the owner of the excess proceeds, and not the former owner of the foreclosed-upon property. The language of section 34.04, however, distinguishes between an "owner" and a "lienholder" in the priority in which excess proceeds are paid, § 34.04(c), whether "former owners" who acquire an interest in the property after the date of the judgment may establish a claim to excess proceeds, § 34.04(c-1), and the circumstances under which an "owner" may assign or transfer its claim to

excess proceeds, § 34.04(f).[4]   Furthermore, subsection (f) was enacted to protect the former "owners" of the foreclosed-upon property.  "Due to the possibility that these assignments could potentially be used to take advantage of property owners, the assignment provisions set out certain criteria that must be met before an assignment will be deemed valid . . . ."  *Strauss v. Belt*, 322 S.W.3d 707, 709 (Tex. App.—Austin 2010, no pet.).   Here, Bayview did not take an assignment from the Crowells, who were the owners of the property; therefore, subsection (f) is inapplicable.

The Crowells also argue that Bayview did not comply with subsection (h), which requires an assignee who files a petition setting forth a claim to excess proceeds to "attach a copy of the assignment or transfer document and produce the original of the assignment or transfer document in court at the hearing on the petition[, and] produce at the hearing the original of any evidence verifying the payment of the consideration given for the assignment or transfer."  TEX. TAX CODE § 34.04(h).  Finally, the Crowells argue Bayview did not comply with subsection (j), which provides that the "amount of the excess proceeds the court may order be paid to an assignee or transferee may not exceed 125 percent of the amount the assignee or transferee paid the assignor or transferor on the date of the assignment or transfer."  *Id.* § 34.04(j).  Neither of these complaints was raised below; therefore, we do not consider them on appeal.

## CONCLUSION

We conclude the assignment of the Home Equity Deed of Trust to Bayview was effective to support Bayview's claim to the excess proceeds, and its claim had priority over the Crowells'

---

[4]   We note that section 34.04 contains no similar restrictions on whether, how, or when a lienholder may assign its interest in excess proceeds.

claim as former owners of the property. *See id.* § 34.04(c)(3),(5).[5] We, therefore, overrule the Crowells' issues on appeal and affirm the trial court's judgment.

Steven C. Hilbig, Justice

---

[5] In the alternative, the Crowells argue that, if the assignments were retroactive and the lien was not extinguished, then Bayview continues to hold a valid lien on the property even after the foreclosure sale. The Crowells contend that because Bayview was not named as a defendant in the original suit brought by the taxing authorities, it is not bound by the judgment, and the tax sale buyer took title to the property subject to Bayview's "non-extinguished lien." Therefore, the Crowells conclude, Bayview suffered no loss from the foreclosure because it retains the ability to enforce its lien against the property. Because we have determined Bayview had a proper claim to the excess proceeds, we do not address this argument.